NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

SEAN M., MARY K., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.M., *Appellees*.

No. 1 CA-JV 17-0557

FILED 5-22-2018

---

Appeal from the Superior Court in Maricopa County
No. JD32175
The Honorable M. Scott McCoy, Judge

**AFFIRMED**

---

COUNSEL

Denise L. Carroll Attorney at Law, Scottsdale
By Denise L. Carroll
*Counsel for Appellant Sean M.*

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant Mary K.*

Arizona Attorney General's Office, Tucson
By Dawn R. Williams
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge James P. Beene joined.

**C R U Z**, Presiding Judge:

**¶1**         Sean M. ("Father") and Mary K. ("Mother") appeal the termination of the parent-child relationship with their child, M.M.

**FACTUAL AND PROCEDURAL HISTORY**[1]

**¶2**         Mother is the biological mother and Father is the biological father of M.M., born April 7, 2011.

**¶3**         The Department of Child Safety ("DCS") took M.M. into custody in February 2016 because of a report M.M. was living in unsafe living conditions. After investigating, DCS found drug paraphernalia, medications, and dangerous objects within M.M.'s reach, and it discovered M.M. had special needs that were not being addressed. DCS provided both parents with several services, including drug assessment and visits with M.M., and it returned M.M. to Mother's and Father's custody in April 2016. DCS removed her from her parents' care again in June 2016, however, because DCS discovered Mother and Father had checked M.M. into a temporary children's shelter unaffiliated with DCS and had not notified DCS. The court found M.M. dependent as to both parents in August 2016, due to their failure to provide a fit and proper home, neglect by failing to address M.M.'s special needs, and failure to provide proper and effective care and control.

**¶4**         DCS moved to terminate the parent-child relationship in June 2017 on the grounds of fifteen months in an out-of-home placement. After the termination hearing, the superior court found DCS proved the ground of fifteen-months-in-care by clear and convincing evidence as to both Mother and Father. It found Mother and Father had been offered parenting skills services, psychological evaluations, individual counseling services,

---

[1]         We view the facts in the light most favorable to sustaining the superior court's findings. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2, ¶ 2 (2016).

and resources to help them find housing, but neither Mother nor Father had participated sufficiently to fully understand M.M.'s special needs or to address their unstable housing and financial issues. It also found neither parent was equipped to meet M.M.'s needs, and it further noted that Mother and Father had two older children with fewer needs than M.M. that resided in the temporary children's shelter unaffiliated with DCS. Finally, the court found termination was in the child's best interests because it would further the plan of adoption, which would provide M.M. with permanency and stability. It found that although M.M. was not in an adoptive placement, she was adoptable.

¶5        Mother and Father timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

I.        Standard of Review

¶6        The superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation omitted). Accordingly, we will not reweigh the evidence, and we will affirm a termination order that is supported by reasonable evidence. *Id.*

II.        Mother

¶7        "Parental rights in the care, custody, and management of their children are fundamental, but not absolute." *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 97, ¶ 7 (App. 2016). A court may terminate the parent-child relationship if it finds: (1) by clear and convincing evidence one of the statutory grounds for severance; and (2) by a preponderance of the evidence that severance is in the best interests of the child. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 281-82, ¶¶ 7, 41 (2005).

        A.        Grounds for Termination

¶8        Mother argues the superior court abused its discretion by finding she: (1) failed to remedy the circumstances that caused M.M. to be

in an out-of-home placement, and (2) would not be capable of exercising proper and effective parental care in the near future. We disagree.[2]

¶9          If a child has been in an out-of-home placement for fifteen months or longer, the superior court may terminate the parent-child relationship if "the parent has been unable to remedy the circumstances that cause[d] the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c).

¶10          Sufficient evidence shows Mother was unable to remedy the circumstances causing M.M. to come into care. M.M. came into care due to unsafe living conditions and Mother's and Father's failure to address M.M.'s special needs. The DCS case manager testified that Mother and Father had not had stable housing at any point since M.M.'s June 2016 removal, despite DCS' referrals to the Changing Lives Center, Central Arizona Shelter Services, and the Homeward Bound Program. Furthermore, she testified that there were "many other barriers" to reunification beyond the parents' homelessness that prevented DCS from providing direct housing services. She said M.M. had special medical needs, including soft palate and a hole in her eardrum from repeated chronic infections, but that the parents had not made the behavioral change necessary to fully understand M.M.'s developmental and age-appropriate milestones despite being offered parent aide services, supervised visits, parenting classes, and a program for parents with children with disabilities.

¶11          Sufficient evidence also shows there was a substantial likelihood that Mother would not be capable of exercising proper effective parental care and control in the future. Although Mother testified she and Father would soon have a place to live, Mother had made similar statements "at least monthly" since the case manager started working on the case in November 2016, and had not been able to follow through. The DCS case manager also said Mother had shown a "long-term pattern" of stating she would soon have a place to live but not following through that had been demonstrated for several years. Furthermore, the DCS case manager testified that Mother did not demonstrate an understanding of

---

[2]     Mother does not challenge the superior court's finding that M.M. was in an out-of-home placement for a cumulative period of fifteen months or longer pursuant to court order. We accordingly do not address that finding.

M.M.'s diagnoses and that she had concerns Mother could understand and meet M.M.'s needs twenty-four hours a day, seven days a week. This evidence is sufficient to support the superior court's findings that Mother was unable to remedy the circumstances causing M.M. to come into care and that there was a substantial likelihood Mother would not be capable of exercising proper effective parental care and control in the future.

### B. Best Interests

**¶12** "To support a finding that termination is in the child's best interest, the petitioner must prove that the child will affirmatively benefit from the termination." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004). This means the court's best-interests determination "must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). "The best interest requirement may be met if, for example, the petitioner proves that a current adoptive plan exists for the child, or even that the child is adoptable." *Mary Lou C.*, 207 Ariz. at 50, ¶ 19. The court may also consider evidence that "an existing placement is meeting the needs of the child" in determining that termination is in the child's best interests. *Id.*

**¶13** Sufficient evidence supports the court's best-interests finding. The DCS case manager testified that M.M. was in a foster home and was adoptable. She further testified that termination would benefit M.M. because it would provide permanency and a safe and stable environment with parents who can meet her special, medical, and developmental needs twenty-four hours a day. She further stated that not terminating the relationship could harm M.M. because Mother and Father had not shown they were able to give her the things she needed to thrive. The superior court accordingly did not abuse its discretion by finding termination of the parent-child relationship with Mother was in M.M.'s best interests.

### III. Father

**¶14** Father challenges the superior court's best interests finding, arguing DCS failed to prove by a preponderance of the evidence that M.M. would accrue an affirmative benefit from Father's parental rights being severed or be harmed by continuing the relationship.[3] We disagree.

---

[3] Father does not challenge the court's findings regarding the grounds for severance.

¶15        Sufficient evidence supports the superior court's finding that termination was in M.M.'s best interests.  Although Father argues he and M.M. share a bond, "[t]he existence and effect of a bonded relationship between a biological parent and a child, although a factor to consider, is not dispositive in addressing best interests." *Dominique M.*, 240 Ariz. at 98, ¶ 12.  Even in the face of such a bond, the court must "evaluate the totality of circumstances and determine whether severance is in the best interests of the child[]." *Id.* at 99.  At the time of the hearing, M.M. was in a foster home and was adoptable.  As discussed *supra* ¶ 13, the DCS case manager testified that termination would benefit M.M. because it would provide permanency and a safe and stable environment with parents who can meet her special, medical, and developmental needs.  She further stated that not terminating the relationship could harm M.M. because Mother and Father had not shown they were able to meet her basic and medical needs as she needed to thrive.  This evidence is sufficient to support the superior court's best interests finding as to Father.

## CONCLUSION

¶16        For the foregoing reasons, we affirm the superior court's order terminating M.M.'s parent-child relationships with Mother and Father.

